605 F.2d 186
 21 Fair Empl.Prac.Cas. 139,
24 Wage & Hour Cas. (BN 351,
21 Empl. Prac. Dec. P 30,335, 87 Lab.Cas. P 33,864
 F. Ray MARSHALL, Secretary of Labor, United States
Department of Labor (Equal Employment Opportunity Commission
substituted in the place and stead of F. Ray Marshall,
Secretary, etc.), Plaintiff-Appellee,
v.
A & M CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, Defendant-Appellant.
 No. 77-2495.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 26, 1979.
 
 H. Jack Woods, College Station, Tex., for defendant-appellant.
 Thomas J. Allen, Atty., Beatrice Rosenberg, E.E.O.C., Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before WISDOM, CLARK and GEE, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 This is a sex discrimination case. The primary issue is the constitutional applicability of the equal pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d) to a Texas public school district. The district court concluded that the Act was applicable and enjoined the defendant, A & M Consolidated Independent School District, from committing future violations of the Act and from withholding back wages due female employees. The defendant appeals from this judgment, arguing that the suit violates the Tenth and Eleventh Amendments and is barred by the Statute of Limitations.[1]
 
 
 2
 The school district operates a high school, a middle school, two elementary schools, and a kindergarten in College Station, Texas. The parties agree that the schools were operated uniformly under common controls for a common business purpose and that the defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act.
 
 
 3
 For some years, extending back at least to the late 1960's, the school district paid male teachers $300 a year more than female teachers. On June 23, 1972, Congress enacted the Education Amendments of 1972, 86 Stat. 235, removing the "executive, administrative, or professional" employee exemption from the Act. The defendant did not comply with this prohibition against sex discrimination until June 1973. The Secretary of Labor filed suit against the district on November 14, 1974, asking for an injunction against future violations of the Act and for an injunction against the withholding of back pay owed to female employees after removal of the professional employee exemption. Later the Equal Employment Opportunity Commission (EEOC) was substituted as plaintiff.
 
 
 4
 At the trial supervisory personnel of the school district termed the extra $300 a "head of household" allowance and testified that it was paid for "extra duties". Evidence established, however, that the school district's Board of Supervisors made no inquiry into whether any female teachers were heads of household and that several in fact were the principal breadwinners for their families. The district court found "any distinction between the male and female teachers as to duties, skill, effort, or responsibility to be illusory". Although a former principal stated that the extra money was justified by male teachers' availability for crowd control, ticket selling, and other duties, the district court found that all teachers handled supervision, discipline, and crowd control. Male teachers stood at the gates during football games and female teachers were required to sit in the bleachers. Males patrolled the school grounds during the lunch hour while females supervised the hallways. Female teachers rode student buses to out-of-town school functions. The trial judge concluded that "(a)lthough one teacher may have performed a task that was different from that assigned to another teacher, these duties were not substantially different and involved equal skill, effort, and responsibility".
 
 
 5
 The court also found that male teachers received the extra $300 whether or not they performed extra duties and that several men had merely fulfilled their teaching responsibilities. The defendants contended that male teachers had more extra duties to perform because there were fewer men, but the trial court noted that this problem resulted solely from the defendant's decision to have men perform duties that women could do and that several women teachers spent as many hours undertaking extra work as the men.
 
 
 6
 The court concluded that the defendant had willfully violated the Act. It issued a permanent injunction against future violations, enjoined the defendant from withholding $35,674 in back wages owed to female teachers, and ordered payment of 6 percent a year interest on this amount from August 31, 1973.
 
 
 7
 * The defendant contends that the Supreme Court's decision in Usery prevents application of the Equal Pay Act to the states. National League of Cities v. Usery, 1976, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245. In that decision the Supreme Court held that the minimum wage provisions of the Fair Labor Standards Act were inapplicable to the states because the provisions would "operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions". Id. at 852, 96 S.Ct. at 2474. Prescribing minimum wages and maximum hours "would impair the States' 'ability to function effectively in a federal system.' " Id.
 
 
 8
 This Court has held that the Equal Pay Act is severable from the Fair Labor Standards Act and that it does not violate constitutional principles set forth in Usery. Pearce v. Wichita County, 5 Cir. 1979, 590 F.2d 128, 131-32. There we noted that the Equal Pay Act merely requires that both sexes receive equal compensation for equal work, "leav(ing) the states free to set all substantive terms of employment." Id. at 132. The right to pay women lower wages than men for equal work "is not among the 'functions essential to (the) separate and independent existence' of the states." Id. Consequently, the Equal Pay Act does not violate the Tenth Amendment.
 
 II
 
 9
 The Eleventh Amendment does not apply to suits brought by the United States. Employees v. Department of Public Health & Welfare of Missouri, 1973,411 U.S. 279, 286, 93 S.Ct. 1614, 1619, 36 L.Ed.2d 251, 257; United States v. Mississippi, 1965, 380 U.S. 128, 140-41, 85 S.Ct. 808, 814-15, 13 L.Ed.2d 717, 725. A suit brought by the Secretary of Labor under the Fair Labor Standards Act is treated as a suit brought by the United States. Dunlop v. New Jersey, 3 Cir. 1975, 522 F.2d 504, 516, Vacated and remanded on other grounds, 1976, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202; Brennan v. Iowa, 8 Cir. 1974, 494 F.2d 100, 103, Cert. denied, 1975, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683; Mitchell v. Robert De Mario Jewelry, Inc., 5 Cir. 1958, 260 F.2d 929, 932, Rev'd on other grounds, 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323. Nevertheless, the defendant argues that the injunction against withholding back wages violates the Eleventh Amendment because the money paid ultimately will go to private citizens.
 
 
 10
 This Circuit has held that a suit by the federal government can be in the public interest even if the money sued for passes to private individuals. Wirtz v. Jones, 5 Cir. 1965, 340 F.2d 901. Wirtz involved the propriety of an injunction under the Fair Labor Standards Act compelling an employer to pay his employees wrongfully withheld minimum wages and overtime compensation. The injunction was proper because its purpose was:
 
 
 11
 not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest. It is true that as a result, money may pass from the employer into the pocket of the employee or, if he is not available, then into the coffers of the United States Treasury, but that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim it, is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about general compliance with § 15(a)(2).
 
 
 12
 Id. at 904-05; Accord, Shultz v. Mack Farland & Sons Roofing Co., 5 Cir. 1969, 413 F.2d 1296, 1302. The opinion quoted Senator John F. Kennedy's statement in the legislative history that the enforcement provision "will serve as a source of protection to employers who pay a decent wage and who must compete with employers who pay a substandard wage". Id. at 905, quoting S.Rep.No.145, 87th Cong., 1st Sess. (1961), Reprinted in (1961) U.S.Code Cong. & Admin.News, pp. 1620, 1621. The Court concluded that "(t)he effectiveness of this protection is a matter of cardinal importance to the vitality of the Fair Labor Standards Act and the fulfillment of its purposes". Id.
 
 
 13
 A Ninth Circuit opinion discussed a second statutory purpose: "(R)estraint (from withholding back minimum wages and overtime compensation) was meant to increase the effectiveness of the enforcement of the Act by depriving a violator of any gains accruing to him through his violation". Wirtz v. Malthor, Inc., 9 Cir. 1968, 391 F.2d 1, 3; Accord, Shultz v. Mack Farland & Sons Roofing Co., 5 Cir. 1969, 413 F.2d 1296, 1302. Both purposes are mentioned in the Senate Report on the 1961 amendment giving the Secretary authority to sue for back compensation. See S.Rep.No.145, 87th Cong., 1st Sess. (1961), Reprinted in (1961) U.S.Code Cong. & Admin.News, 1620, 1658-59.
 
 
 14
 Subsequent cases have applied this reasoning to uphold suits against state governments for unpaid compensation. See, e. g., Dunlop v. New Jersey, 3 Cir. 1975, 522 F.2d 504, 513-17 & 519-20 (Adams, J., concurring), Vacated and remanded, 1976, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202;[2] Brennan v. Iowa, 8 Cir. 1973, 494 F.2d 100, 103-04, Cert. denied, 1975, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683. Moreover, the Public Employees case has recognized such authority:
 
 
 15
 Section 16(c) (of the FLSA) gives the Secretary of Labor authority to bring suit for unpaid minimum wages or unpaid overtime compensation under FLSA. . . . Section 17 gives the Secretary power to seek to enjoin violations of the Act and to obtain restitution in behalf of employees. Sections 16 and 17 suggest that since private enforcement of the Act was not a paramount objective, disallowance of suits by state employees and remitting them to relief through the Secretary of Labor may explain why Congress was silent as to waiver of sovereign immunity of the States.
 
 
 16
 411 U.S. at 285-86, 93 S.Ct. at 1618-1619.
 
 
 17
 The legislative purposes underlying the Fair Labor Standards Act implicitly underlie the Equal Pay Act. The payment of compensation to victims of discrimination will encourage employers to obey the Act and will prevent law-abiding employers from suffering in the marketplace. See Hodgson v. Wheaton Glass Co., 3 Cir. 1971, 446 F.2d 527, 535. Enforcement against the school district here obviously will encourage it and other government entities to obey the law. Moreover, allowing the Secretary to sue under the Equal Pay Act for an injunction against withholding back compensation fulfills two other purposes of the enforcement provisions of the Fair Labor Standards Act. First, it will secure wages for the many employees who are reluctant to sue their employer. See S.Rep.No.145, 87th Cong., 1st Sess. (1961), Reprinted in (1961) U.S.Code Cong. & Admin.News, 1620, 1658; Hodgson v. Wheaton Glass Co., 3 Cir. 1971, 446 F.2d 527, 532. Second, it will "relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violations of the act by an employer". S.Rep.No.145, 87th Cong., 1st Sess. (1961), Reprinted in (1961) U.S.Code Cong. & Admin.News, 1620, 1659. The right of employees to bring an action against their employer terminates once the Secretary of Labor brings an action to recover their unpaid wages unless the action is dismissed without prejudice on motion of the Secretary. 29 U.S.C. § 216(c). This suit thus fulfills the purposes of the Equal Pay Act without violating sovereign immunity principles.[3]
 
 III
 
 18
 Although the statute of limitations for Equal Pay Act suits is two years, the period is increased to three years for "willful" violations. 29 U.S.C. § 255(a). Here willfulness must be proved because the violations charged took place between two and three years before the complaint was filed.
 
 
 19
 This Court formulated a standard for willfulness in Coleman v. Jiffy June Farms, Inc., 5 Cir. 1972, 458 F.2d 1139, Cert. denied, 1972, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219. There we held:
 
 
 20
 Requiring employers to have more than awareness of the possible applicability of the FLSA would be inconsistent with (congressional) intent. Consequently, we hold that employer's decision to change his employees' rate of pay in violation of FLSA is "wilful" when . . . there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know that FLSA was in the picture?
 
 
 21
 Id. at 1142. In a more recent case this Court held that
 
 
 22
 neither a good faith belief in the lawfulness of his wage and overtime regulations nor complete ignorance of their invalidity shields the employer from the additional year of liability. . . . An employer acts willfully and subjects himself to the three year liability provision if he knows, or has reason to know, that his conduct is Governed by the (Act).
 
 
 23
 Brennan v. Heard, 5 Cir. 1974, 491 F.2d 1, 3 (emphasis in original).
 
 
 24
 The district judge here found that the defendant had reason to know that teachers were covered by the Equal Pay Act. E. P. Ozment, an assistant superintendent, when asked whether he felt paying men more money than women constituted a violation of the Act, replied, "I wasn't aware, of course, there was a violation in '72. Might have been in July or August when the law came out." When asked whether Superintendent W. T. Reidel said anything about abolition of the head of household allowance to the Board at their August 1972 budget meeting, Ozment stated,
 
 
 25
 Yes, I think Mr. Reidel did point out to the board that for all, the amendment had been passed; that there was a that the amendment had been a law had been passed that it was against the law to pay more.
 
 
 26
 Reidel and a Board member testified that they did not remember such a statement, but "we cannot substitute our judgment for that of the trial court in the exercise of credibility choices." Goosby v. Osser, 5 Cir. 1971, 452 F.2d 39, Reversed and remanded on other grounds, 1973, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36; Accord, Dillon v. M.S. Oriental Inventor, 5 Cir. 1970, 426 F.2d 977, 978, Cert. denied, 1970, 400 U.S. 903, 91 S.Ct. 140, 27 L.Ed.2d 140.
 
 
 27
 Moreover, actual awareness of the law is unnecessary to establish willfulness. Knowledge is imputed; "everyone is charged with knowledge of the United States Statutes at Large, and their enactment gives legal notice of their contents". Cole v. Railroad Retirement Board, 8 Cir. 1961, 289 F.2d 65, 68; Accord, Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 384-85, 68 S.Ct. 1, 3, 92 L.Ed. 10, 15. Imputation is especially appropriate in a case such as this when, in the district court's words, the Education Amendments of 1972 "by its title is directed squarely at the defendant's sole business and purpose".
 
 
 28
 Admittedly, the school district and its employees were executing one-year contracts at about the time the law was enacted. But the annual budget was not adopted until August, over a month after the Act's passage on June 23, 1972. The district did not distribute the first paychecks until September 25, 1972, more than three months after the statute's enactment. The Board did not hire a consultant to investigate its compliance with the Act until January 1973. It did not provide for equal salaries for men and women until June 1973.
 
 
 29
 The school district attempts to excuse its violation by pointing to its record of compliance since June 1973. Current obedience to the Act does not make up for past transgressions. This Court has stated that "(t)o allow exceptions (to willfulness) . . . in situations where an employer, once charged with violating the Act, corrects the unlawful practice, would sap much of the E.P.A.'s vitality". Brennan v. J. M. Fields, Inc., 5 Cir. 1974, 488 F.2d 443, 448, Cert. denied, 1974, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121. Here the district court correctly concluded that the defendant willfully violated the Equal Pay Act.
 
 
 30
 The judgment is AFFIRMED.
 
 CHARLES CLARK, Circuit Judge, concurring:
 
 31
 I would not decide that individual state employees could request the Secretary of Labor to bring suit against the State for their personal benefit as the law required at the time this cause of action arose. It seems at least inconsistent to segregate the Equal Pay Act from the Fair Labor Standards Act for purposes of denying tenth amendment protection, then to rely on its incorporation to turn the eleventh amendment's shield. I do agree that the school district defendant here is not the State for purposes of the eleventh amendment. (See footnote 3.) I concur in the result.
 
 
 
 [1]
 The defendant also contends (1) that the trial judge was biased in favor of the plaintiff and (2) that due process was violated by Congress in its enactment of the 1972 amendment and by the Department of Labor and the district court in their handling of this suit. These contentions are without merit
 
 
 [2]
 Although Dunlop was vacated and remanded in light of the Supreme Court's decision in Usery, its analysis of the federal government's ability to sue for damages remains applicable to this case and others where the Tenth Amendment is not implicated
 
 
 [3]
 The EEOC posits two other arguments why the Eleventh Amendment should not bar this suit. First, it contends that the Equal Pay Act can also be justified under the commerce clause and as an exercise of Congress' power under § 5 of the Fourteenth Amendment. The latter authority is not subject to Eleventh Amendment limitations. Fitzpatrick v. Bitzer, 1976, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614, 621-22. Because the Eleventh Amendment does not foreclose suits by the United States, we need not reach this question. See Pearce v. Wichita County, 5 Cir. 1979, 590 F.2d 128, 132 n.5. Second, it argues that a Texas school district cannot invoke the state's sovereign immunity. Although we do not rule on this issue, we note that two cases lend support to its contention. See Hander v. San Jacinto Junior College, 5 Cir. 1975, 519 F.2d 273, 277-80; Wright v. Houston Independent School Dist., S.D.Tex., 1975, 393 F.Supp. 1149, 1152-58, Vacated and remanded on other grounds, 5 Cir. 1978, 569 F.2d 1383