Ray MARSHALL, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellant,

v.

CHALA ENTERPRISES, INC., dba Chala
Tire Co., et al., Defendants-Appellees.

No. 79–3286.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1981.

Decided May 18, 1981.

Eleanor Jenkins, Atty., Washington, D. C., for plaintiff-appellant.

Bernard A. Leckie, Meserve, Mumper & Hughes, Newport Beach, Cal., for defendants-appellees.

Before SCHROEDER, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The Secretary of Labor commenced this action under section 17 of the Fair Labor Standards Act, 29 U.S.C. sections 201–219, seeking restitutionary and prospective injunctive relief against Chala Enterprises, Inc., on behalf of ten of Chala's employees. The Secretary alleged that Chala had violated the record keeping and overtime[1] provisions of the Act by failing to pay those employees a regular hourly rate for the first forty hours of work, and one and one-half times the regular rate for each hour in excess of forty per week. Chala admitted the record keeping violations, but denied that its compensation scheme violated the overtime provisions.

Although the faulty record keeping made it rather difficult to determine the method by which the employees' compensation was calculated, the district court found that Chala had not violated the overtime provision. The court then declined to issue either a prospective or restitutionary injunction, partly for the reason that, in the court's opinion, "the compensation paid by the defendants to their employees was reasonable."

The dispute centers on ten employees of the defendant who worked as attendants at various gasoline service stations operated by Chala in the Los Angeles vicinity.[2] These employees were paid a fixed lump sum amount for a sixty hour workweek. Chala's basic contention is that the lump sum salary figures were actually based on the requisite regular hourly rate, and reflected payment for forty hours at such rate and time and a half for hours in excess of forty. Chala thus contends that the hourly rate was predetermined, but that the method of computation was designed to produce a round figure, e. g., $800 or $1,000, for each month. This apparent anomaly was explained by testimony that the employees were more interested in knowing their monthly salary than the hourly rate upon which it was based. The Secretary claims that Chala simply computed hypothetical regular and overtime rates *post hoc*, by breaking down the predetermined fixed salary. He urges that the employer's payment scheme resulted in fixed lump sum salaries, without any breakdown into a regular rate for the first forty hours and one and one-half times the regular rate for the remaining twenty hours. In support of this contention, the Secretary notes several circumstances that, taken together, cast serious doubt on Chala's assertion that the employees were paid an hourly wage. For example, it appears that deductions for hours missed from the regular sixty-hour week were made on a straight time basis. If the employees were being paid time and a half for the twenty overtime hours, one would expect the deductions to mirror this up to twenty hours.[3] The Secretary also notes that increases in compensation came

1. Section 7(a)(1) of the Act provides:
§ 207 Maximum Hours
(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (1976).

2. Chala contends on appeal that several of the employees are properly classifiable as "managers," apparently seeking to bring them within the exemption of § 13(a)(1) for "executive, administrative, or professional" employees. The district court did not address this contention. *See* note 7 *infra.*

3. Chala asserted in its post-trial brief to the district court that the straight time deduction was a "benefit" conferred on the employee.

in the form of an increase from one round lump sum figure to another, rather than as an increase in the hourly wage.

The district court accepted Chala's argument that the lump sum figure for a sixty-hour week consisted of predetermined regular and overtime components, although it noted that the company's records failed to reflect this computational scheme. In light of this finding, and in reliance on the "reasonableness" and "non-exploitive" nature of the rate of compensation, the district court denied all relief.

## ANALYSIS

### A. The Section 7 Violation

■ We need not reach the issue whether the district court erroneously accepted Chala's computation of an hourly rate, arrived at after the fact by dividing the monthly salary into a regular hourly wage and a stepped-up overtime rate.[4] The decisive factor in this case is the failure of the defendant to carry its burden of showing an express agreement with its employees as to a regular rate of pay for the first forty hours of work per week. This court has held that when employees are compensated on a lump sum basis, "*[a]bsent explicit proof of another mutually agreed upon rate of pay*, the court must infer that 'the regular rate actually paid was substantially that obtained by dividing the weekly wage payable for the working of the scheduled workweek by the number of hours in such scheduled workweek.'" *Brennan v. Valley Tow-*

ing Co., Inc., 515 F.2d 100, 106 (9th Cir. 1975) (emphasis added) (quoting *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204, 67 S.Ct. 1178, 1181, 91 L.Ed. 1432 (1947)). *See also Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 87 (9th Cir. 1975).[5] Thus, when a weekly salary is paid, the employer is deemed to have paid the same rate for all hours worked, rather than the requisite overtime compensation, unless it can demonstrate the existence of a mutual agreement regarding the regular rate to be paid for the first forty hours.

■ The burden of establishing an express agreement regarding the method of computation is on the employer. *See Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d at 86–87 n.1, 88. This serves to minimize the possibility that implementation of the important purposes of section 7 will be dependent upon the resolution of ambiguities as to what individual employees understood regarding the scheme of compensation. The record here is replete with such ambiguities, and they are directly reflected in the finding by the district judge on this issue.[6] Even if we accept that finding, it falls far short of establishing an express agreement regarding the regular rate of pay and, thus, is insufficient as a matter of law to avoid the conclusion that Chala violated section 7 of the Act. For this reason, we reverse and remand to the district court for imposition of the proper remedy. To assist the district court upon remand, we add a discussion of the standards by which

---

4. The *post hoc* computation is foreclosed by prior decisions of this circuit. *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 106 (9th Cir. 1975) ("It is the 'actual fact' of a stepped-up rate for overtime which propagates the goals of the act, and not the hypothetical retrospective construction of such a rate structure.").

5. In *Elmer's Disposal* the court found that a district court's determination that an employer had violated § 7 was supported by the lack of an express agreement as to the hourly rate, and by the employer's practice of deducting one-sixth of the total weekly pay for each day missed out of a six day workweek, without regard to the total number of hours worked.

510 F.2d at 87. The second circumstance is similar to Chala's practice of deducting for hours missed at a rate of one-sixtieth the weekly total, instead of at the higher time and a half rate.

6. Finding Number 2 of the district court reads as follows:

Although the record does not show that the employees were informed specifically that their compensation was fixed in the manner above stated, they were generally aware that their pay took into account the fact that they were regularly working twenty hours per week "overtime."

the relief to which the Secretary is entitled is to be determined.[7]

## B. *Remedy*

The district court, quoting *Dunlop v. Saghatelian*, 520 F.2d 788, 790 (9th Cir. 1975), denied injunctive relief, restitutionary or prospective, in light of its conclusions that the employees were compensated at a "reasonable" rate, that they were not exploited by their employer, and that Chala "had no gains accruing to [it] through [its] violation." These factors do not exhaust those relevant to a determination of the proper remedy, and we think the emphasis that they suggest is at odds with the policy of the Fair Labor Standards Act. We conclude that the district court incorrectly relied on *Saghatelian*.

The Supreme Court has stated, in an analogous context, that "such discretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' "[8] Addressing the issue of a court's discretion to award reimbursement for lost wages following a discharge in violation of the Fair Labor Standards Act, the Court has noted that "[w]hen Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes." *Mitchell v. Robert De Mario Jewelry, Inc.,*

361 U.S. 288, 291–92, 80 S.Ct. 332, 334–35, 4 L.Ed.2d 323 (1960).

In *Mitchell*, the Court set forth what we believe to be the basic framework for determining whether restitutionary relief should be afforded in cases involving violations of the minimum wage or overtime pay requirements of the Fair Labor Standards Act. After examining the purposes of the Act, the Court stated, "because of what we have found to be the statutory purposes there is doubtless little room for the exercise of discretion not to order reimbursement...." *Id.* at 296, 80 S.Ct. at 337. We conclude that in the case before us the district court did not properly exercise its discretion.

■ We first address the restitutionary injunction sought by the Secretary. "It must be remembered that restraining appellees from withholding the ... overtime compensation is meant to vindicate a public, rather than a private, right, and that the withholding of the money due is considered a 'continuing public offense.' " *Wirtz v. Malthor, Inc.*, 391 F.2d 1, 3 (9th Cir. 1968); *Wirtz v. Jones*, 340 F.2d 901 (5th Cir. 1965). The policies underlying the overtime provision (section 7) of the FLSA are distinct from those served by the minimum wage requirement (section 6), although there are some common purposes. Section 6 deals with the subject of "wages," while section 7 deals with the regulation of "hours." Section 7 is intended to address the "evil of

---

7. Chala contends that several of the employees are managers. The district court did not rule on the issue whether these employees are exempt from § 7 under the provisions of § 13(a)(1). On remand, therefore, the court should consider that question, keeping in mind that the statutory exemption should be narrowly construed in light of the remedial purposes of the Act. The burden of showing that an employee is clearly within the exemption is on the employer. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 208, 86 S.Ct. 737, 748, 15 L.Ed.2d 694 (1966). In this case, special attention should be given to the amount of time, if any, each employee spent on nonadministrative tasks. *See Haber v. Americana Corp.,* 378 F.2d 854 (9th Cir.), *cert. denied* 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed.2d 262 (1967).

8. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975) (quoting *United States v. Burr*, 25 F.Cas. 30, 35 (C.C.Va.1807) (Marshall, C. J.)). The Court in *Albemarle* was addressing the issue of a district court's discretion to deny back pay in a Title VII suit. It went on to add:

The power to award back pay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions. A court must exercise this power "in light of the large objectives of the Act," *Hecht Co. v. Bowles*, 321 U.S. 321, 331 ... (1944). That the court's discretion is equitable in nature ... hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review.

422 U.S. at 416, 95 S.Ct. at 2371 (citations omitted).

'overwork.'" *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942). A principal purpose of section 7's guarantee of one and one-half times the regular rate of pay for overtime work is to accomplish a broader social goal, *i. e.*, to spread employment more widely through the work force by discouraging employers from requiring more than forty hours per week from each employee. This purpose requires the payment of the premium overtime rate regardless of the level of the regular hourly rate. *Id.* at 578, 62 S.Ct. at 1220. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 1194, 92 L.Ed. 1502 (1948); *Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 87 (9th Cir. 1975). Thus, the fact that a given level of compensation may be "fair" or "non-exploitative" is irrelevant when considering the propriety of a restitutionary injunction in a suit brought by the Secretary to remedy a violation of section 7 of the Act.

■ A restitutionary injunction prevents unjust enrichment, and affords employees payments that Congress has determined they are entitled to receive. Denial of an injunction deprives them of the opportunity to recover these amounts. In addition, the prospect of a restitutionary injunction discourages future violations of the Act whether intentional or negligent in nature. Even if the total compensation Chala would have paid its employees would not have been different had the company complied with the Act, such an injunction will, both in this case and generally, encourage the careful record keeping the Act requires, and will assure that the employees are paid in the manner that the Act requires.

The district court's reliance on *Dunlop v. Saghatelian*, 520 F.2d 788 (9th Cir. 1975), as authority for denial of relief in this case was misplaced. The decision in *Saghatelian*

rested, as this court has previously pointed out,[9] on an extreme set of facts. The court in *Saghatelian* recognized that "the back pay prospect is the effective 'spur' to compliance with the substantive requirements of ... the Fair Labor Standards Act," 520 F.2d at 790, yet added that "one does not 'spur' a horse until he dies." *Id.* Both the appellee in that case, and the business itself, were in serious jeopardy; both the district court and the court of appeals were motivated by the fact that imposing the burden of a restitutionary injunction would have had a serious deleterious effect on the appellee's physical and mental health, 514 F.2d at 621 and n.2, and on the very existence of his business. *Id.* Appellees in the case before us make no such claim. Even if appellees were to urge economic hardship, the argument would fail. The general rule is set forth in *Wirtz v. Malthor, Inc.*, 391 F.2d at 3, where this court held that "the small size of appellees' business and the possible hardship caused them by having to pay the withheld wages and compensation do not warrant refusing the restraint."

■ In short, restitutionary injunctions are an essential tool in effectuating the policy of the Act. The importance of this tool in assuring compliance with the Act and its policies has been recognized by Congress, S.Rep.No.145, 87th Cong., 1st Sess. 40, *reprinted in* [1961] U.S.Code Cong. & Ad.News 1620, 1659, and the courts. In *Wirtz v. Malthor, Inc.*, 391 F.2d at 3, this court noted that the public purposes of the Fair Labor Standards Act "can be fulfilled in this case only by restraining the appellees from further withholding the unpaid compensation." *See also Wirtz v. Milton J. Wershow Co.*, 416 F.2d 1071, 1073 (9th Cir. 1969). We reach the same conclusion in this case.

As to the prospective injunctive relief sought by the Secretary, the district court

9. *E. g., Marshall v. Valhalla Inn*, 590 F.2d 306, 308 (9th Cir. 1979). In the original decision in *Saghatelian [Brennan v. Saghatelian]*, 514 F.2d 619 (9th Cir. 1975), the court made it clear that its affirmance of the district court's denial of injunctive relief was limited: *On the facts of this case*, we hold the trial judge did not abuse

his equitable discretion." *Id.* at 622 (emphasis in original). The appellee relies on *Dunlop v. Saghatelian*, 520 F.2d 788, where the same panel felt it necessary to explain its denial of a motion for rehearing in light of the Supreme Court's decision in *Albemarle Paper Co. v. Moody*, discussed *supra* at note 8.

refused to grant relief in light of Chala's assurances of present and future compliance with the Act, and because it regarded the cost of the present litigation as having taught the defendant an "expensive lesson." This is not a sufficient basis for denying the prospective relief. This court has noted that

> [p]resent compliance is only one of the factors relevant to the exercise of an informed judicial discretion to determine whether an injunction against future violations is appropriate. A complaint for injunctive enforcement of the Fair Labor Standards Act does not lack equity merely because present compliance may be shown or admitted.

*Wirtz v. Milton J. Wershow Co.*, 416 F.2d 1071, 1072 (9th Cir. 1969). The factors to be considered by the district court upon remand were well-stated by the Fifth Circuit in *Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962). After noting that "[t]he injunctive processes are a means of effecting general compliance with national policy as expressed by Congress," the court there stated:

> The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires anyway—to comply with the law .... We do not say or imply that injunctions should be issued freely, without regard for the facts, simply because it is the Government asking for the injunction. We say that the manifest difficulty of the Government's inspecting, investigating, and litigating every complaint of a violation weighs heavily in favor of enforcement by injunction—*after* the court has found an unquestionable violation of the Act.

*Id.* See also *Wirtz v. Atlas Roofing Manufacturing Co.*, 377 F.2d 112, 116–18 (5th Cir. 1967).

In exercising its discretion, the district court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right. We reverse this part of the district court's decision, and remand to allow reconsideration of the Secretary's request for prospective relief.

## CONCLUSION

We reverse the decision of the district court, with instructions to enter an order granting the restitutionary injunction, and to reconsider the denial of the prospective relief sought. The amount of overtime compensation to which the employees are entitled should be determined by dividing the weekly compensation by sixty in order to determine the regular rate, and multiplying such regular rate by a factor of one and one-half in order to determine the overtime rate, *Brennan v. Valley Towing Co., Inc.*, 515 F.2d at 106. The court should then determine the number of hours of overtime worked by each employee during the period at issue, and multiply that number by the amount by which the overtime rate exceeds the regular rate. Finally, the district court should consider appellees' argument that certain employees are exempt from the overtime provisions of the Act. *See* note 7, *supra*.

The case is remanded for further proceedings consistent with this opinion.