690 F.2d 453
 25 Wage & Hour Cas. (BN 1025, 95 Lab.Cas. P 34,276
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
Roger D. GRANTHAM, Individual, doing business as University
Texaco Service Center, Defendant-Appellee.
 No. 81-4478
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 1, 1982.
 T. Timothy Ryan, Jr., Sol. of Labor, Deborah H. Green, Mary-Helen Mautner, Beate Bloch, Attys., Dept. of Labor, Washington, D. C., for plaintiff-appellant.
 Clifton S. Gaddis, Hattiesburg, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GEE, RANDALL and TATE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Secretary of Labor brought this action under Section 17 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1976) ("FLSA" or "Act"), to enjoin Roger D. Grantham from violating the FLSA's overtime and record keeping provisions and from further withholding unpaid overtime wages due certain employees who worked for Grantham as his service station attendants. The district court found that Grantham "has not made it his business and duty to comply with the provisions of the Act," and has "repeatedly neglected and failed to keep records required by the Act." Record at 157-58. The court enjoined Grantham from violating the overtime and record keeping requirements in the future and assessed costs against him. It found, however, that Grantham had not knowingly, intentionally or willfully violated the Act and refused to award any back wages, stating that Grantham was not liable for the amount of back wages sought by the Secretary, and that Grantham had not intended to deprive his employees of that to which they were entitled.
 
 
 2
 The Secretary has appealed the district court's refusal to grant a restitutionary injunction. For the reasons set forth below, we reverse and remand for proceedings consistent with this opinion.
 
 
 3
 Grantham is the sole proprietor and active manager of University Texaco Service Center, a gasoline service station located in Hattiesburg, Mississippi. Grantham kept his station open around the clock, seven days a week. Full-time employees worked either a day or night shift and shifts varied between eleven and twelve hours a day. Full-time employees consistently worked overtime hours.
 
 
 4
 The basic dispute at trial centered around whether Grantham paid his employees one and a half times their regular rate of pay for the hours they worked in excess of forty in a week and whether his official payroll records accurately reflected the hours the employees worked and the rates at which they were paid. Grantham testified that he paid his employees the minimum wage for the first forty hours and one and a half times the minimum for all hours over forty. On the other hand, the employees generally testified that they were paid for all hours worked at straight-time rates.[1] Some employees indicated that Grantham had informed them that he would never pay overtime.
 
 
 5
 The compliance officer testified that Grantham had apparently reduced the number of recorded hours worked to make it look as if he was paying overtime, when in fact he was paying straight-time. Grantham admitted that he had reduced the hours recorded, but claimed that he had docked his employees for taking time off for personal business. The employees denied taking much personal time off. Grantham also admitted that he did not take payment of commissions into account when computing overtime, as required by the Department of Labor regulations. 29 C.F.R. § 778.17 (1981).
 
 
 6
 A Department of Labor compliance specialist had investigated Grantham's service station business in 1977 and again in 1978, before the third investigation which led to this litigation. During the first investigation, Grantham's records showed on their face that he was paying straight-time rates for overtime hours. In addition, Grantham had not preserved basic records of daily and weekly hours worked. The compliance officer explained to Grantham what the Act required and Grantham promised to comply. When the Department contacted Grantham the second time in 1978, the investigator discovered that Grantham was still not preserving his basic time records. Once again, Grantham received an explanation of how to comply with the Act and once again he promised full compliance. The 1979 investigation revealed, however, that Grantham was still not keeping time records or paying overtime, and the Department decided to bring suit.
 
 
 7
 I. The Propriety of a Restitutionary Injunction.
 
 
 8
 The Secretary contends on appeal that the district court should have issued the restitutionary injunction since it apparently found that Grantham had violated the Act. He urges us to reverse on the grounds that the trial judge's reliance on the employer's good faith was improper. Grantham contends that we cannot reverse the trial court's "finding" that he was not liable for back wages unless it is clearly erroneous, and that the denial of the injunction was a proper exercise of the court's discretion. He does not contest the issuance of the prospective injunction. We agree with the Secretary that the district court's consideration of Grantham's allegedly good intentions in connection with the decision whether to issue a restitutionary injunction was improper, and accordingly reverse the district court's order denying such an injunction.
 
 
 9
 While a restitutionary injunction need not issue as a matter of course upon a finding of past wages due, the district court's discretion to deny the injunction where it makes such a finding is severely limited and must be exercised with an eye to the purposes of the Act. Donovan v. Brown Equipment and Service Tools, Inc., 666 F.2d 148, 157 (5th Cir. 1982). Those purposes are first, the compensation of the employees for their losses and second, the correction of a continuing offense against the public interest by increasing the effectiveness of the Act's enforcement. Id. at 156. This latter purpose is accomplished by divesting a violator of any gains accruing through his violation and by protecting those employers who comply with the Act's wage requirements from the unfair competitive advantage which would otherwise be enjoyed by noncomplying employers. Id. at 157; see also Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 803 (9th Cir. 1981); Marshall v. A & M Consolidated Independent School District, 605 F.2d 186, 189 (5th Cir. 1979); Wirtz v. Malthor, 391 F.2d 1, 3 (9th Cir. 1968).
 
 
 10
 An employer's good faith is not grounds for the denial of a restitutionary injunction since the remedy is not designed to penalize the employer, but rather to compensate the employees for earned wages which have not been paid. Brown, supra, at 156; A & M Consolidated, supra, at 190. In fact, a court's refusal to order payment of back wages forecloses the employees from ever recovering their wages, since the employees' right to sue for wages due terminates once the Secretary has brought suit for an injunction. 29 U.S.C. § 216(b) (1976). In light of the purposes of the Act, an injunction against withholding back pay is virtually indispensable. Brown, supra, at 156.
 
 
 11
 Grantham's focus on the clearly erroneous standard of review[2] of district court findings of fact does not necessarily aid his defense on the question whether a restitutionary injunction should issue, since the district court apparently found that he had committed past violations of the Act. The district court stated that Grantham "has surely not measured up to the requirements and expectations of the Department." Record at 157-58. Its injunction forbidding future violations of both the record keeping and overtime provisions of the Act is a further indication that the court believed that past violations had occurred. There is normally no need to enjoin violations of the overtime provisions if there has been no violation in the past. Grantham himself admitted that he had not considered payment of commissions in his calculations of overtime, in violation of the department regulations defining "regular" and overtime pay. 29 C.F.R. § 778.117 (1981).
 
 
 12
 In addition, the compliance officer's testimony concerning Grantham's payroll provided convincing evidence of past violations. The officer compared the reduced hours that Grantham had entered in his payroll records with the number of hours recorded on three weekly assignment sheets,[3] on which the employees had entered the actual time they began and ended their shifts. He discovered that, with one exception, Grantham had consistently reduced by one-third the overtime hours shown on the assignment sheets, a mathematical manipulation by which an employer who pays for overtime hours at a straight-time rate can make it appear that proper overtime has been paid.
 
 
 13
 Grantham claimed that he reduced the hours to dock employees for meal breaks and time taken off for personal affairs. At trial, the night employees testified that they grabbed a bite to eat during slow periods and left their meals when a customer came into the station. Similarly, the day employees said that they usually ran across the street for a sandwich and also attended to the customers during their meals. While an employer is entitled to deduct personal time from an employee's pay, he cannot dock breaks when the employee must continue with any duties related to his work. Brennan v. Elmer's Disposal Service, Inc., 510 F.2d 84, 88 (9th Cir. 1975). Grantham claimed that a number of employees ate at restaurants and missed days and that he recorded the time missed in a diary, but he was unable to produce this diary at trial. It strains credulity to contend that the amount of personal time taken by employees would coincidentally correspond to the hours needed to be reduced to make the amount paid look like proper overtime payments.
 
 
 14
 Since the district court found that Grantham had committed past violations, it abused its "small residue of discretion" in denying the restitutionary injunction. Brown, supra, at 157. At trial, Grantham warned that he might be forced to close the gas station if required to pay back wages. An employer's unsubstantiated claims of economic hardship, however, are not grounds for refusal to award the employees what is due them. Marshall v. Chala Enterprises, Inc., 645 F.2d 799, 803 (9th Cir. 1981); Wirtz v. Malthor, 391 F.2d 1, 3 (9th Cir. 1968).[4] Neither is the fact that a given level of compensation is "fair," or as Judge Cox emphasized, the fact that the employer "has kept his employees satisfied," Record at 158, relevant to the consideration of whether an injunction should issue. Chala, supra. The issuance of a restitutionary injunction under the FLSA is not a decision that an employer is evil or exploitative, but merely an award of wages due the employees. We hold that, given the circumstances in this case, a restitutionary injunction should have been granted.
 
 
 15
 II. The Amount Due the Employees.
 
 
 16
 Furthermore, we agree with the Secretary that Grantham is liable for three, rather than two, years of back wages under the FLSA's statute of limitations, providing for an extra year of back wages for "willful" violations of the Act. 29 U.S.C. § 255(a) (1976). The district court's finding that Grantham's mistakes were not willful because they were not intentional was clearly erroneous. As we have construed the Act, a violation is willful if the employer is aware that his conduct is governed by the FLSA, A & M Consolidated, supra, at 190-91, or if he knows that the FLSA is "in the picture." Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1971), cert. denied, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Grantham knew that he was governed by the Act since he had already been investigated by the Department of Labor two times and the investigator had given him detailed explanations of the Act's requirements on both occasions. Therefore, his noncompliance was willful as a matter of law. A & M Consolidated; Jiffy June Farms. In addition, there is evidence that Grantham's violation was willful in the intentional sense in light of his manipulation of the payroll records to disguise his failure to pay overtime.
 
 
 17
 Finally, the Secretary's calculations of the amount due the employees should form the basis of the district court's award. Using Grantham's own time records, the compliance officer reconstructed the number of actual hours worked by dividing the number of hours recorded by the regular rate of pay. The amount due could then be determined by multiplying the hours worked in excess of forty per week by one and one-half times the regular rate of pay.
 
 
 18
 This formula for reconstructing the hours and wages has been consistently upheld where the employer has failed to keep adequate records. Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Marshall v. Mama's Fried Chicken, Inc., 590 F.2d 598 (5th Cir. 1979); Wirtz v. Mississippi Publishers Corp., 364 F.2d 603 (5th Cir. 1966). As the Supreme Court stated in Anderson, while an employee bears the initial burden of showing that he or she has performed work not properly compensated, he or she meets this burden by showing the amount owed through just and reasonable inference, and "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act." 328 U.S. at 688, 66 S.Ct. at 1192-1193. Grantham may demonstrate on remand where the compliance officer's calculations are inaccurate, but his evidence must be as precise as that offered by the Secretary. Claims that he kept a record of personal time in a diary which he is not now able to find will not suffice. See Wirtz v. Lieb, 366 F.2d 412 (10th Cir. 1966).
 
 
 19
 That part of the district court's order denying a restitutionary injunction is reversed with instructions to grant the injunction. The amount of overtime compensation to which the employees are entitled should be determined in accordance with the Secretary's amended calculations, except where Grantham is able to demonstrate that those calculations are inaccurate.
 
 
 20
 REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 GEE, Circuit Judge, concurring:
 
 21
 I concur in the court's opinion, although I disagree with the meaning accorded the term "willful"-as used in Section 255 of the Portal-to-Portal Act-in our opinion in Coleman v. Jiffy-June Farms, Inc., 458 F.2d 1139 (5th Cir. 1971), relied on by the court. My reasons for doing so are stated in the separate concurrence of myself and Chief Judge Clark in Hill v. J. C. Penney Co., Inc., 688 F.2d 370 at 376 (5th Cir., 1982). We are bound by that authority, regardless of my differences with it; and only the en banc court could alter it.
 
 
 
 [1]
 A couple of employees testified that they were presently receiving overtime and others were uncertain about their rate of pay
 
 
 [2]
 Fed.R.Civ.P. 52(a)
 
 
 [3]
 Grantham challenges the validity of calculations for three years of wages based on only three weekly assignment sheets. Grantham admitted, however, that he routinely threw the sheets away in violation of Department regulations, 29 C.F.R. 516.6(a)(1) (1981), of which he was well aware. He cannot now be heard to complain that the calculations are not completely accurate because of his own failure to keep adequate records. Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)
 
 
 [4]
 Grantham relies on Dunlop v. Saghatelian, 520 F.2d 788 (9th Cir. 1975), in urging this court to take his financial condition into consideration. The Ninth Circuit, however, has limited the application of Saghatelian to its "extreme set of facts." Chala Enterprises, supra, at 803