Robert B. REICH, Secretary of Labor, Plaintiff–Appellant,

v.

PETROLEUM SALES, INC.; William D. Flowers, President of Petroleum Sales, Inc.; and William Dallas Flowers, Jr., Defendants–Appellees.

No. 93–5384.

United States Court of Appeals, Sixth Circuit.

Submitted June 13, 1994.

Decided June 3, 1994 *.

William J. Stone, Anne P. Fugett (briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, Ralph D. York, Bobbye D. Spears, Regional Sol., Theresa Ball, Judith E. Kramer, Deputy Sol., U.S. Dept. of Labor, Office of the Sol., Nashville, TN, for plaintiff-appellant.

Walter L. Evans, Evans & Kyles, Memphis, TN, for defendants-appellees.

Before: GUY and BOGGS, Circuit Judges; and WOODS, Senior District Judge.**

PER CURIAM.

The Secretary of Labor sued Petroleum Sales, Inc., William D. Flowers, its president and 50 percent owner, and William Dallas Flowers, Jr., its vice president and 50 percent owner (collectively "PSI"), for back pay,

---

* This decision was originally issued as an "unpublished decision" filed on June 3, 1994. On July 20, 1994, the court designated the opinion as one recommended for full-text publication.

** The Honorable George E. Woods, United States District Court for the Eastern District of Michigan, sitting by designation.

damages, and injunctive relief under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.* The Secretary charged PSI with past and present violations of the minimum wage, overtime, and record-keeping provisions of the Act. After trial, the district court awarded back pay and liquidated damages to former employees of PSI. The court denied prospective injunctive relief, reasoning that the sanctions imposed were sufficient. The court also refused to award back pay and liquidated damages owed to 25 employees who were listed on PSI's payroll records by only their first names. The Secretary appeals the district court's denial of an injunction and its refusal to award damages to the 25 unidentified employees. For the following reasons, we reverse and remand.

## I.

PSI operated six gasoline stations and convenience stores in Shelby County, Tennessee.[1] Each of the stores was engaged in the sale of gasoline, food, beverages, cigarettes, and miscellaneous items. A Department of Labor wage and hour compliance officer investigated PSI in late 1988 to determine PSI's compliance with provisions of the Act. As a result of that investigation, the Secretary sued PSI on June 28, 1990, for past and continuing FLSA violations.

Prior to the trial, the parties signed a consent order. The order provided, in relevant part, that PSI was restrained from deducting shortages and other losses, such as uncollectible credit card sales, from the wages of any employee in a non-overtime week in which such deductions would reduce the employee's rate of pay below the then-statutory minimum wage of $3.80 an hour. It further restrained PSI from deducting such shortages from any employee in any week in which the employee worked more than 40 hours. The order also restrained PSI from failing to compensate employees at

rates required by the Act for pre-shift and post-shift work, training periods, and other time worked. Additionally, the order specifically enjoined PSI from failing to pay overtime compensation to store managers when deductions had been made from the pay of store managers for shortages or other items. PSI also was required to maintain adequate and accurate records of all hours worked by its employees.

An eight-day bench trial was conducted in August and September of 1991. The district court found that PSI had committed extensive violations of the FLSA. The court determined that PSI routinely made deductions from the wages of its hourly-paid employees for: (1) inventory and cash shortages; (2) uncollectible credit card charges; (3) incorrectly processed credit card charges;[2] (4) drive-off losses incurred when a customer pumped gas but left without paying for it; and (5) shortages from funds used in making change. The court also determined that PSI penalized its employees, via wage deductions, for incomplete paperwork and failing to finish listed shift duties. In addition, the court determined that many employees had worked unrecorded or off-the-clock time for which they were not paid. The court found that in some instances PSI's executive assistant, area supervisor, and store managers reduced the hours recorded as worked on the employees' time sheets; in others, the cashiers were directed to record only their scheduled hours and not any pre-shift and post-shift work time.

The court further found that, because it was PSI's policy not to issue a paycheck before an employee provided the firm with a driver's license, beer permit, and social security card, some employees were never paid. In addition, the court determined that PSI did not compensate new employees for the three days they spent in on-the-job training if the employees did not return to work a fourth day.

---

**1.** PSI's six combination self-service gas station and convenience store outlets closed on January 23, 1991. On February 6, 1991, during the pendency of this lawsuit, PSI and Dallas Flowers filed separate bankruptcy petitions for Chapter 11 reorganization. By the time of trial, PSI had sold four stores and reopened the remaining two.

**2.** PSI required *its employees to record the customer's driver's license on the credit charge slip. If the employee failed to follow this procedure, a deduction was made whether or not the credit card company honored the transaction.*

The court also determined that PSI violated the Act's recordkeeping provisions by failing to maintain accurate records and, in the case of some employees, failing to keep any records at all; falsely recording wages as paid when paychecks were withheld; falsifying records by listing impermissible deductions as "loans" or "garnishments"; reducing the number of hours worked on the records; and failing to record coerced payments from employees resulting from shortages. The court further noted that PSI had kept no records of the last names of 25 employees who had worked but were never paid.

In addition, the court held that PSI continued to violate the FLSA in deliberate violation of the consent order. The court found that the defendants

> contacted John Blaine of Wage–Hour in an obvious attempt to find a way around the Order. After being told by him they could not deduct loans and could deduct only court-ordered garnishments, they almost immediately entered into a program to disguise shortage deductions in violation of the Order as loans and garnishments. They coerced or attempted to coerce de facto deductions from pay for shortages by threatening termination if loan documents were not signed or cash repayments not made. They kept no records of employee cash shortage repayments so as to prevent their discovery. They continued to withhold entire paychecks at times for shortages. They continued to fail to maintain records of hours worked for [n]on-exempt managers and failed to keep accurate records of hours worked for cashiers. Two weeks before the trial, Dallas Flowers tried to coerce a manager into forging the endorsement of an employee onto a payroll check to be retained in payment of claimed shortages. The check represented one employee's entire week's wages.

Based on these findings, the court awarded $84,793.84, plus an equal amount in liquidated damages, to 363 former PSI employees. The court directed that any amounts not distributed to aggrieved employees within three years after the date of judgment should be deposited into the United States Treasury as miscellaneous receipts. In addi-

tion, the court ordered PSI to pay a remedial fine of $39,472 for its willful contempt of the order. The court, however, refused to issue a permanent injunction against future violations and did not award back wages in the amount of $1,256.28 and an equal amount in liquidated damages owed to the 25 unidentified employees. The Secretary has appealed the latter two decisions.

## II.

The Secretary appeals the district court's denial of injunctive relief. "The issuance of an injunction under the Fair Labor Standards Act is addressed to the reasonable discretion of the trial judge." *Wirtz v. Flame Coal Co.*, 321 F.2d 558, 560 (6th Cir. 1963). The exercise of discretion is not unbridled, *Dunlop v. Davis*, 524 F.2d 1278, 1280 (5th Cir.1975), and "in exercising its discretion the court must give 'substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right.'" *Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir.1987) (quoting *Marshall v. Chala Enters.*, 645 F.2d 799, 804 (9th Cir.1981)).

The district court based its decision to deny injunctive relief largely on its finding that the penalties it imposed were severe and that any "proven continuous or repetitious violations will be dealt with even more punitively than in this case."

We have emphasized, however, that prospective injunctions under the FLSA serve a remedial, not a punitive purpose:

> The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations. Prospective injunctions are essential because the cost of noncompliance is placed on the employer, which lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance. The imposition of an injunction is not punitive, nor does it impose a hardship on the employer "since it requires him to do 'what the Act requires anyway—to comply with the law.'"

*Martin v. Funtime, Inc.,* 963 F.2d 110, 113–14 (6th Cir.1992) (citations omitted). We also have noted that a district court, in exercising its discretion, should consider: (1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance. The most important factor is the likelihood that the employer will comply with the Act in the future. Our review of the record convinces us that the district court did not adequately weigh these factors in reaching its decision.

■ First, the court failed to consider the fact that PSI presented no evidence at trial of present compliance with the statute's requirements. Nor did PSI demonstrate a likelihood, much less give assurance, that it would obey the FLSA in the future. *Cf. Martin v. Coventry Fire Dist.,* 981 F.2d 1358 (1st Cir.1992) (denial of injunctive relief was proper where employer's violations were inadvertent and there was no evidence of any threatened future violations); *Mitchell v. Hertzke,* 234 F.2d 183, 187–88 (10th Cir.1956) (denial of injunctive relief was proper where proven violations were few, not made in bad faith, the employer had made extraordinary efforts to prevent recurrence, and no reasonable grounds existed for believing future violations would occur). Indeed, the court expressly found that PSI did not heed any of the compliance advice provided to it by the wage and hour compliance officer and, in fact, deliberately chose to ignore much of it.

Second, even after agreeing to comply with the Act and after the entry of the consent order, PSI deliberately continued to commit the same violations. For instance, only two weeks before the beginning of trial, Dallas Flowers attempted to force store manager Minnie Childeress into forging the endorsement of her daughter, another PSI employee, on the daughter's paycheck to compensate for an alleged shortage. PSI's intentional violations of the consent order suggest that future violations of the Act are not unlikely.

Clearly, on this record, PSI has not shown a likelihood of compliance in the future. Even if it had made such a promise, PSI's past conduct would call the reliability of such a promise into serious question. In similar cases in which the likelihood of future compliance was not considered, the lower courts were reversed. *See, e.g., Big Bear,* 825 F.2d at 1384 ("The district court looked only to the lack of evidence of continuing violations to justify denial of an injunction. It did not consider that compliance came only after an investigation and court proceedings were instituted, and that the violations were made in bad faith. It made no findings as to whether the employer had instituted procedures to ensure compliance in the future, nor findings about whether the employer made credible promises about future compliance. The court's denial of prospective relief solely on the basis of present compliance was improper."); *Davis,* 524 F.2d at 1278 (denial of injunctive relief not proper when the district court did not consider the previous conduct of the employer and the dependability of his promises for future compliance). Based on the record before us, we conclude the district court abused its discretion in failing to grant the requested injunctive relief.

The Secretary next argues that the district court abused its discretion in denying an award of back wages and liquidated damages to the unidentified 25 employees. In ruling on this issue, the court first noted that the evidence the government proffered in support of this claim was "extremely confusing and disorganized." The court then observed that the Secretary did not expect to pay the 25 unidentified employees; rather, the money was to be paid to the United States Treasury. The court concluded that "[b]ecause the identity of the true claimant[s] cannot be established and the [Secretary] is not suing for [damages] for the former employees," this claim will be denied.

■ To the extent that the court denied relief to the 25 unidentified employees because the money was to be paid to the United States Treasury, the court erred. Damage awards for unidentified employees are "within the scope of the FLSA, so long as a preponderance of the evidence establishes the existence, work hours, and wages of these employees." *American Waste Removal Co. v. Donovan,* 748 F.2d 1406, 1410 (10th Cir.1984). *See also Marshall v. Hope Garcia Lancarte,* 632 F.2d 1196, 1197–1199 (5th Cir.

1980); *McLaughlin v. Stineco, Inc.*, 697 F.Supp. 436, 451 (M.D.Fla.1988). Such awards benefit the public interest by depriving the employer of any benefits accrued as a result of its illegal pay practices and by protecting those employers who comply with the FLSA from unfair competition with those employers that do not. *Donovan v. Grantham*, 690 F.2d 453, 456 (5th Cir.1982). "Under section 216(c) of the FLSA ... unclaimed back wages are not returned to an employer who has violated the FLSA but are paid into the United States Treasury as final miscellaneous receipts." *American Waste Removal*, 748 F.2d at 1410.

Nevertheless, if the district court refused to award damages to the unidentified employees because it could not determine the proper amount, this would not constitute an abuse of discretion. *See Lancarte*, 632 F.2d at 1199. The burden of proof applicable in such situations was explained by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946):

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*See also Stineco, Inc.*, 697 F.Supp. at 451 (discussing the shifting burdens of proof when the identity of the employees is unknown).

Here, the Secretary contends that, based on PSI's payroll records and time sheets, a wage and hour compliance officer was able to calculate the back wages due to the unidentified employees. Because the district court refused to award damages on the basis that the employees' identities could not be determined, the court never considered these calculations. Accordingly, we remand for reconsideration on this issue.

**REVERSED** and **REMANDED.**