Alexis **HERMAN**, Secretary of Labor, United States Department of Labor (successor to Robert Reich), Plaintiff,

v.

**PALO GROUP FOSTER HOME, INC.,** a Michigan Corporation; **Abraham Joshua,** Individually, and Doing Business as **Ramsdell Foster Care,** and **Ramsdell Foster Care,** Defendants.

No. 1:96 CV 280.

United States District Court, W.D. Michigan.

Aug. 21, 1997.

Denise C. Hockley–Cann, J. Davitt McAteer, Richard J. Fiore, United States Department of Labor, Office of the Solicitor, Chicago, IL, for Plaintiff.

John H. Hess, Hess & Hess, P.C., Grand Rapids, MI, for Defendants.

### AMENDED OPINION [1]

ENSLEN, Chief Judge.

Plaintiff Alexis Herman, Secretary of Labor for the United States Department of Labor (DOL),[2] brings this civil action to enforce the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1997) [hereinafter "FLSA" or "the Act"], on behalf of several employees of Palo Group Foster Home, Inc. (hereinafter "Palo") and Ramsdell Foster Care (hereinafter "Ramsdell"), seeking unpaid back wages, liquidated damages, and injunctive relief. Defendants are Abraham Joshua, the President of Palo and Owner/Administrator of Ramsdell, as well as the two business entities themselves. This matter is before the Court on plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), or, in the alternative, for partial summary judgment with regard to liability. Plaintiff alleges that defendants have violated FLSA by failing to adhere to the minimum wage, overtime, and record-keeping provisions of the Act. Upon review, the Court finds that no genuine issues of material fact remain for resolution, and, therefore, grants plaintiff's motion for summary judgment.

### A. STANDARD

The purpose of the summary judgment procedure is to "pierce the pleadings and assess the proof in order to see whether

---

1. The Court issues this amended opinion and judgment pursuant to Federal Rule of Civil Procedure 60(a).

2. This case was originally brought by the former Secretary of Labor, Robert Reich. As Mr. Reich's successor, Ms. Herman succeeds in his interest as the proper plaintiff.

there is a genuine need for trial." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. Pro, note following Rule 56). Thus, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, or weigh the evidence submitted, but rather is empowered to determine only whether such issues exist. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). Furthermore, in reviewing the evidence, the Court must view the "'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion."' *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party, here the plaintiff, carries the initial burden of informing the Court of the basis for its motion and of identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, "[w]hen a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided ..., must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). If after adequate discovery, however, the Court determines that "the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106

S.Ct. at 1356 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## B. BACKGROUND

The Court begins by noting that there is a vast disparity between the body of evidence presented by plaintiff and that presented by defendants. In support of her motion for summary judgment, the Secretary has presented the Court with numerous pieces of documentary evidence, including: affidavits from each of the employees on whose behalf this suit was brought, affidavits from the investigating agents at the DOL, and several documents containing defendants' admissions. Attached as supporting exhibits to these documents are pay stubs, work schedules, job descriptions, and correspondence between the DOL and defendants spanning an 11–year period. Defendants, in response, have provided the Court with only three uncertified documents, which are virtually meaningless without sworn affidavits to explain the circumstances of their origin. As they are, it is unclear to the Court to what extent these documents are probative of anything, much less supportive of, defendants' opposition to summary judgment. Indeed, they appear to support plaintiff's case that defendants were fully aware of the requirements of FLSA when these claims accrued. Nevertheless, the Court considers them to the extent that they are relevant. The effect of presenting such scant evidence, however, is that the better part of plaintiff's evidence goes unrebutted.

Palo and Ramsdell are two business entities which provide adult foster care to the sick, aged, and mentally ill in western Michigan. Defendant Abraham Joshua, the president of the now defunct Palo, and owner and administrator of Ramsdell, was at all times relevant to this proceeding the primary individual in charge of establishing both entities' personnel practices. In 1983, defendant Joshua's business practices first came under DOL scrutiny when the DOL investigated Palo. During that investigation, the DOL discovered violations of the Act's minimum wage and overtime requirements which reflected $1,073.02 in unpaid wages to Palo

employees. The DOL Compliance Officer also discovered that defendants had failed to keep the records required by the Act. During a final conference with DOL agents, the Compliance Officer informed Mr. Joshua of these deficiencies. At the conclusion of that meeting, Mr. Joshua agreed to future compliance with the requirements of the Act.

The DOL revisited defendants Joshua and Palo in 1985. Investigating defendants' activities for the period of 1983–1985, the DOL again believed that defendants Joshua and Palo were in violation of the Act. Mr. Joshua was again informed of the requirements of the Act relevant to his business by DOL agents. Specifically, the agents discussed the Act's requirement that, in order to claim credit for meals or lodging provided to his employees, Mr. Joshua was required to keep accurate records of the actual costs of those services. The agents also stated that any credits approved for the periods being investigated were only applicable to offset past unpaid wages. In order to offset future wages, such records would be required. To reiterate the point, the agents provided Mr. Joshua with informational pamphlets issued by the DOL detailing the application of the Act to facilities like Palo.

The DOL again initiated an investigation of defendant Joshua's business endeavors at Palo in 1995. This time, however, the DOL also probed Ramsdell, noting that Joshua had a hand in that organization as well. As a result of that investigation, the DOL Compliance Officer found three ways in which the defendants' practices resulted in undercompensation of their employees: 1) defendants failed to consider the hours worked during sleeping shifts compensable; 2) defendants paid their employees set wages for every shift regardless of the number of hours they actually worked; and finally 3) defendants had taken deductions for the provisions of meals and lodging, despite the fact that they could not provide records of the actual costs

of those services in accordance with the Act. In reconstructing the back wages due the Palo and Ramsdell employees, the DOL agent determined that the Palo employees were owed $47,509.27 in unpaid wages for the period between April 8, 1993 and June 1, 1996 and Ramsdell employees were owed $13,044.39 for the period between May 1993 and April 20, 1996. In making these calculations, Compliance Officer Charlene Babcock allowed the employers some deductions for the provision of facilities despite the fact that no records supporting such deductions were produced.[2]

On April 8, 1996, plaintiff commenced the instant action against defendants Abraham Joshua, Palo Group Foster Care, Inc., and Ramsdell Foster Care.

## C. LIABILITY

The Fair Labor Standards Act sets the federal minimum wage and overtime standards for the majority of employers in the United States. Under the Act, employers are generally required to compensate their employees at or above the stated minimum wage for the first 40 hours of work and at one and one-half times the employee's regular wage for overtime. *Id.* at §§ 206, 207; *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996). Though certain exemptions to these requirements exist, the burden falls upon the employer to prove that an exemption is applicable, *Douglas v. Argo–Tech Corp.,* 113 F.3d 67 (6th Cir.1997), and those exemptions are to be narrowly construed against the employer seeking to assert them. *Auer v. Robbins,* —— U.S. ——, ——, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (citing *Arnold v. 'Ben Kanowsky Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960)).

### 1. FLSA Applicability

■ To state a prima facie case to recover back pay under FLSA, plaintiff must satisfy the threshold requirements for FLSA appli-

---

**2.** A detailed explanation of the DOL agent's calculation methodology appears within the record and need not be restated here. The Court simply notes that in calculating the employees' back wages, Compliance Officer Charlene Babcock allowed meal credits for both Palo and Ramsdell employees, basing her calculations on the

amount defendants declared on their federal tax returns for the purchase of groceries each year. Ms. Babcock also calculated a lodging credit for one resident Ramsdell employee, based on the amount defendants declared as the Ramsdell establishment's expenses less the cost of groceries.

cability. Plaintiff must demonstrate: 1) that there existed an employer-employee relationship between the relevant parties within the meaning of the Act; and 2) that the parties were engaged in activities covered by the Act. *See Kowalski v. Kowalski Heat Treating, Co.*, 920 F.Supp. 799, 806 (N.D.Ohio 1996); *see also Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295, 105 S.Ct. 1953, 1958, 85 L.Ed.2d 278 (1985).

Plaintiffs have properly alleged that FLSA is applicable to the transactions in question without opposition from defendants. Indeed, defendants have conceded that the matters in question fall within the purview of the Act. In addition, defendants do not claim any exemption from the minimum wage and maximum hour restrictions of the Act. Consequently, the Court begins its analysis from the uncontested premise that FLSA covers the distribution of wages discussed herein.

### 2. Burden of Proof

■ Once these threshold requirements are met, plaintiff generally carries the burden to demonstrate that the defendant-employers are in violation of the Act. If, however, defendants have failed to maintain adequate and accurate wage and hour records, the burden is allocated as follows:

> "[W]here the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

*United States Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir.1995) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192–93, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds as stated in, Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972)). Evidence that the defendant-employer failed to adhere to the record-keeping requirements of the Act and the accompanying regulations may be evidence that defendants' records are inadequate. *See, e.g., Cole*, 62 F.3d at 779. Because a determination that defendants' records are inadequate would alter the burden of proof, the Court will confront this question before proceeding.

### 3. Sufficiency of Defendants' Records

■ 29 U.S.C. § 211(c) requires employers whose actions are governed by the Act to keep records of each employee's wages, hours, and other conditions and practices of employment in accordance with the regulations promulgated by the DOL's Wage and Hour Division under 29 C.F.R. Part 516. Those regulations require that, among other things, employers maintain accurate records of the number of hours worked each workday and workweek by each employee. 29 C.F.R. § 516.2(a)(7) (1996); *see Cole*, 62 F.3d at 779. Furthermore, an employer who makes deductions from employee's wages for "board, lodging, or other facilities" is required, except in limited circumstances not applicable here, to maintain records "substantiating the cost of furnishing each class of facility [to their employees.]" 29 C.F.R. § 516.27(a).[3]

Defendants' records are deficient in two respects. First, defendants failed to maintain records of the number of hours actually worked by their employees each workday and the total number of hours worked each workweek. Second, defendants have declined to provide any documentation substantiating the cost of providing meals to their employees. Without these figures, proper calculation of the correct pay under the Act is impaired. Given that defendants

---

**3.** Defendants seem to contend that they are not required to provide documentation of meal and lodging costs. They are patently wrong and, according to the unrebutted evidence submitted, defendants were well aware of these requirements long before the institution of this suit. *See* discussion of willfulness and the statute of limitations, § D(1) *infra.*

have offered no legal argument to support exempting them from these regulations or factual basis for finding that, despite these deficiencies, the records suffice, their failure to comply with these regulations renders their records inadequate and, consequently, the burden-shifting scheme discussed above applies in this case.[4]

### 4. Violation of the Act

■ As noted above, under these circumstances plaintiff need only prove that the employees did, in fact, do work for which they were improperly compensated and produce sufficient evidence to justify the amount and extent of that work by a reasonable and just inference. *Cole,* 62 F.3d at 779. Here, plaintiff asserts that because defendants did not treat all the hours worked by their employees as compensable time, the employees' hourly pay rate fell below the minimum wage, and overtime hours were miscalculated. Plaintiff will have carried her burden if the employees were entitled to compensation for those hours as a matter of law and if the record supports the amount of compensation alleged to be due the employees.

■ To determine the propriety of defendants' wage expenditures, the Court must then determine the definition of "hours worked." Addressing the construction of that term, 29 C.F.R. § 785.7 provides in relevant part:

> The United States Supreme Court originally stated that employees ... must be paid for all time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer of his business." *Tennessee Coal, Iron & Railroad v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer, that "an em-

ployer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself...." *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore v. Swift,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Thus, work which requires an employee to "sleep with one eye and one ear open" to ensure the safety and well-being of residents of a health care facility is clearly compensable labor. *Hultgren v. County of Lancaster,* 913 F.2d 498 (8th Cir.1990). In addition, rest periods from five to twenty minutes long, and meal periods during which the employee is not relieved of duty and free to leave his or her post, are also compensable. § 785.18, 785.19.

In keeping with this definition of hours worked, 29 C.F.R. § 785.21 explicitly states that: "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." In the instant case, it is undisputed that the employees of Palo Group worked overnight shifts which were not considered compensable time. Thus, the question is simply whether plaintiff has met its burden to show that the employees "worked" during that period.

Plaintiff has produced unrebutted evidence that during those shifts, the Palo employees had various responsibilities, including remaining alert, checking on the residents, and checking on the safety and security measures in place at the facility. Plaintiff has further shown that these employees were paid at a rate below minimum wage. Although sleep was permitted, the employees reported being awakened frequently to assist the patients. But whether or not the Palo employees had

---

4. While defendants do not assert that their records are adequate, they do imply that they should not be penalized for any deficiency in their records because they had a good faith belief that they were in compliance with the Act. While defendants are correct that the Act provides a good faith defense to liability, 29 U.S.C. §§ 259, 260, availability of that defense has no impact on the Court's determination of the proper allocation of the burden of proof. Consequently, the issue of good faith will not be considered here.

active duties, the mere fact that they were required to be present at the employer's establishment in case of emergency is enough to justify compensation under the Act. Consequently, it is clear that insofar as defendants did not pay minimum wage or overtime to the Palo employees for the overnight shift, they were in violation of the Act.

■ Where, however, an employee is on duty for 24 hours or more, "the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." § 785.22(a). But "[i]f the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked [and i]f the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, ... if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." § 785.22(b).

Plaintiff has also produced unrebutted evidence that the employees on 24-hour shifts at Ramsdell were paid a set shift rate which included an 8-hour sleep deduction, regardless of the number of hours they actually worked during the sleep period. Plaintiffs evidence reveals that the employees for whom sleep deductions were taken were never paid for the times their sleep was interrupted by work as required by § 785.22. Thus, to the extent that defendants did not pay minimum wage or overtime to the Ramsdell employees on 24-hour shifts for work performed during their sleeping period, they were again in violation of the Act.

■ The set shift rate used by defendants also resulted in undercompensation when the employees worked longer than the hours scheduled per shift. Under the regulations, "hours worked" include all time an employee performs work which the employer knows of,

or has reason to believe is continuing. § 785.11. The question remains, however, whether defendants knew or had reason to know of this extra work. Again, there is uncontroverted evidence that Palo and Ramsdell employees were paid the same rate, regardless of the number of hours actually worked and that they often worked longer than the dictated eight-or 24-hour periods. Indeed, there is evidence that defendants required the Palo employees to work eight and one-half hour shifts rather than the eight hours the employer used to calculate wages, that defendants occasionally required both the Palo and Ramsdell employees to stay late waiting for the next shift to arrive without additional compensation, and that many of the employees' meal times, which were often less than 30 minutes and constantly interrupted, should have been compensated because they did not meet the requirements of § 785.19.[5] In light of this unrebutted evidence, to the extent that defendants did not include these hours calculating minimum wage and overtime pay, the Court finds again that defendants were in violation of FLSA.

■ The above analysis reveals that the employees represented by plaintiff were improperly compensated for hours they worked. Thus, all that remains of plaintiff's burden is to show that the amount of damages requested is supported by the record. Once again plaintiff has presented uncontroverted evidence by way of schedules and pay stubs which, when coupled with the affidavits taken from the employees, satisfy plaintiff's burden of showing not only that the employees did work for which they did not receive sufficient compensation under the Act, but the specific amounts to which they are entitled. Plaintiff provides a detailed accounting of how the back wages were calculated by way of affidavits produced by DOL agents. Furthermore, attached as exhibits are the spreadsheets the DOL agents used to analyze the data provided by defendants and their employees. In light of this mountain of

**5.** Despite the fact that the evidence supports compensation for each of these periods, the Compliance Officer has presented a conservative estimate of the amount owed by defendants by allowing for 30-minute meal credits and calculating the hours worked based on the set eight and one-half hour shift at Palo and eight-and 24-hour shifts at Ramsdell.

evidence, the Court finds that plaintiff has carried its initial burden in this analysis.

Accordingly, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee[s'] evidence." *Cole*, 62 F.3d at 779. Defendants, however, have not submitted one iota of evidence to contradict plaintiff's assessment of the hours worked and wages owed defendants' employees. Instead, arguing a form of equitable estoppel, defendants assert that they may not be held liable under the Act because they had a good faith belief that they were acting in conformity therewith.

### 5. Good Faith Defense

 The Good Faith defense embodied in " § 10 of the Portal to Portal Act of 1947, 29 U.S.C. § 259,[6] provides the exclusive estoppel defense to actions under [FLSA] by giving protection against the recovery of back wages in certain limited circumstances. Section 10 requires that a defendant plead and prove that it relied on an opinion *in writing* from the Administrator of the Wage and Hour Division." *Usery v. Godwin Hardware, Inc.*, 426 F.Supp. 1243, 1268 (W.D.Mich.1976). Consequently, oral representations and interpretations from other sources will not qualify as a basis for this defense. *Id.*

Defendants assert that, because they were acting in accordance with instructions from DOL agents, they should not be penalized for their allegedly inadvertent violations of the Act. Defendants argue that because DOL agents approved a particular meal credit in 1985, they reasonably expected to be able to take the same deductions with an increase for interest over a decade. The document upon which defendants rely is an internal Wage and Hour narrative summary, which plaintiff disclosed during the course of this litigation. While that document does clearly state that a meal credit of $0.62 per hour was allowed in 1985, it does not even imply that defendants should have ignored the mandates of the Act and not recalculated the deduction every year based on the actual cost of providing the service. Indeed, the document states explicitly that the deduction was approved because the employer "provided actual meal expense to the [compliance officer.]" If anything, this document supports plaintiffs contention that defendants were fully aware that of the specific requirements of the Act. When coupled with the affidavits submitted by plaintiff in which the DOL agents state that they "specifically advised Joshua that if a credit was provided these credits were only applicable to offset minimum wages related to past back wages due, and that in order to establish credit to offset minimum wages paid in a future period, he was required to maintain records showing the actual cost in accordance with the act and applicable regulations[,]" it is clear that no reasonable jury could find that defendants are entitled to the good faith defense.

Having determined that defendants have failed to produce a written opinion from the Administrator of the DOL upon which they relied in good faith, the Court rejects this affirmative defense. The Court also notes in passing that this defense was technically barred because defendants failed to affirmatively plead it. Therefore, having found no issues of fact remain for resolution at trial on

---

**6.** Section 10 of the Portal to Portal Act of 1947, 29 U.S.C. § 259, provides in pertinent part as follows:

(a) [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA], if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforce-

ment policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect. (b) The agency referred to in subsection (a) of this section shall be—

(1) in the case of the [FLSA], Administrator of the Wage and Hour Division of the Department of Labor[.]

the subject of liability, the Court grants plaintiff's motion for summary judgment on that issue.

## D. LEGAL and EQUITABLE RELIEF

### 1. Statute of Limitations

 Having held that defendants violated the Act, the Court must now determine whether summary judgment is also appropriate on the issue of damages. While it is clear that the Palo and Ramsdell employees are entitled to some recovery, defendants argue that the recovery is limited by the statute of limitations provision of the Portal–to–Portal Act of 1947 which specifically governs FLSA actions. Generally, 29 U.S.C. § 255 restricts plaintiffs to filing claims which have accrued within the two years prior to the filing of the complaint. An action accrues at the end of each pay period in which the employer fails to comply with the Act. *Salazar v. Brown,* 131 Lab. Cas. P 33,373 (W.D.Mich. Apr.9, 1996) (unpublished); *see Biggs v. Wilson,* 1 F.3d 1537, 1540 (9th Cir.1993). If, however, the cause of action arises out of a willful violation of the Act, the statute of limitations is extended to three years. § 255. In reviewing the scope of this exception, the Supreme Court held in *McLaughlin v. Richland Shoe, Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), that the Secretary must prove that the "employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute." *Id.* at 133, 108 S.Ct. at 1681; *Hazen Paper Company v, Biggins,* 507 U.S. 604, 614–15, 113 S.Ct. 1701, 1708–09, 123 L.Ed.2d 338 (1993) (following *Richland Shoe* ). Applying this standard, the Sixth Circuit in *Dole v. Elliott Travel & Tours,* 942 F.2d 962 (6th Cir.1991) held that a defendant, who had "actual notice of the requirements of [ ] FLSA by virtue of earlier violations, [who agreed] to pay unpaid overtime wages, and [who assured his] future compliance with [ ] FLSA[,]" satisfied the willfulness standard of *Richland Shoe. Id.* at 967.

In the instant case, plaintiff argues that the evidence she has presented clearly dem-onstrates that the defendants were fully aware the requirements of the Act when the instant claims accrued and consequently, the three-year limitation applies. As discussed above, plaintiff has provided two sworn affidavits attesting to the fact that DOL agents personally advised Mr. Joshua of the specific regulations on at least two occasions during the previous investigations of Palo in 1983 and 1985, that Mr, Joshua previously agreed to pay at least some unpaid wages, and that he gave his assurances of future compliance with FLSA at the end of each of the two investigations. Plaintiff also points out that defendants admit that Mr. Joshua was made aware of the requirements of the Act during those previous investigations. Finally, it is undisputed that Mr. Joshua's understanding of the requirements of FLSA can be imputed to the business entities he ran.

Defendants argue nonetheless that they should not be subject to the willful violation exception because they relied upon a DOL agent's oral approval of a meal credit of $0.78 per hour. If that deduction was allowed in this context, defendants continue, with increases for inflation, defendants' calculations would have been correct and defendants would not be in violation of the Act. Thus, defendants argue, because they relied on the incorrect belief that they could use the credits approved in 1985 as a benchmark, the FLSA violations were, at worst, negligent rather than knowing or reckless. Defendants, however, have again failed to provide any evidence to rebut the assertions presented in plaintiff's affidavits. Instead, defendants have provided the Court with the summary document discussed above which only confirms that a meal credit of $0.62 per hour was allowed during the 1985 investigation. It does not in any way counter the evidence presented by the plaintiff. Without contrary evidence, the Court is constrained to find that plaintiff, having met her burden to prove the defendants' acts were willful, is entitled to summary judgment on this issue and that plaintiff is entitled to the benefit of the three-year limitations period.[7] Based on the plain-

---

7. The Sixth Circuit has yet to decide whether this issue is a question of law for resolution by a judge or one of fact for a jury. *EEOC v. Detroit Health Dept.,* 920 F.2d 355, 358 n. 3 (6th Cir. 1990). However, given that defendants have failed to present any evidence to counter plain-

tiff's unchallenged calculations, plaintiff is, therefore, entitled to recover unpaid back wages in the amount of $60,533.66 and costs pursuant to 29 U.S.C. § 216(c).

### 2. Liquidated Damages

■■■ In addition to providing a cause of action for repayment of undercompensation, "FLSA provides that an employer who violates [the minimum wage or] overtime compensation provisions of the Act 'shall be liable' for liquidated damages in an amount equal to unpaid back wages. The [C]ourt may refuse to award liquidated damages if, and only if, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." *Elliott Travel*, 942 F.2d at 967 (internal citation omitted). Thus, the question of whether a court has discretion to deny a request for liquidated damages is closely related to the question of willfulness answered above. *Id.* Indeed, a finding that a defendant has acted willfully is inconsistent with a finding that defendants acted in good faith. *Equal Employment Opportunity Commission v. City of Detroit Health Department*, 920 F.2d 355, 358 (6th Cir.1990). Consequently, the Court's previous finding of willfulness mandates an award of liquidated damages equal to the amount of back wages awarded above.

### 3. Injunctive Relief

■■■ The final issue before the Court is whether plaintiff is entitled to injunctive relief Under FLSA, the trial court has limited discretion to issue an injunction against the offending party. *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654 (6th Cir.1994). "The purpose of issuing an injunction against future violations is to effectuate general compliance with the Congressional policy of abolishing substandard labor conditions by preventing recurring future violations." *Id.* (citation omitted). In keeping with that goal, the Sixth Circuit has instructed district courts to consider the following in exercising their discretion to impose prospective relief: "(1) the previous conduct of the employer;

(2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance." *Id,* The Circuit put special emphasis on the third factor, explicitly deeming it the most important. *Id.*

Evaluating defendants' behavior in light of this standard, the Court concludes that injunctive relief is appropriate in this case. First, it is undisputed that: 1) during the 1983 investigation, the DOL determined that Mr. Joshua and Palo were in violation of the Act; and 2) that, at that time, Mr. Joshua became aware of the requirements of FLSA and promised to comply with those requirements in the future. It is also undisputed that in 1985, Mr. Joshua was again investigated and again promised to comply with the Act in the future. He has, however, failed to do so. Despite repeated promises to adhere to the statute, Mr. Joshua and his companies have once again been found in violation of the Act. Consequently, the Court finds that injunctive relief is appropriate in this context and orders that defendants be enjoined from committing further violations of the Act.

### E. CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment and orders defendants to pay back wages totaling $60,533.66, to their present and former employees at Palo ($47,509.27) and Ramsdell ($13,044.39), an equal amount of liquidated damages ($60,533.66), and the costs of this litigation pursuant to 29 U.S.C. § 216(c). In addition, the Court permanently enjoins defendants from engaging in any future conduct violative of the Act.

---

tiff's showing of willfulness and that, therefore, no reasonable jury could find for defendant on

this record, summary judgment is appropriate in this context.