**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 15 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CYNTHIA METZLER, Acting
Secretary of Labor, United States
Department of Labor,

      Plaintiff - Appellee,

v.

IBP, INC.,

      Defendant - Appellant.

No. 96-3258

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 88-2171-EEO)**

---

Jack L. Whitacre (Michael F. Delaney and David L. Wing with him on the brief),
Spencer Fane Britt & Browne, Kansas City, Missouri, for the Defendant -
Appellant.

Paul L. Frieden (J. Davitt McAteer, Steven J. Mandel and William J. Stone with
him on the brief), U.S. Department of Labor, Washington, D.C., for the Plaintiff -
Appellee.

---

Before **LUCERO**, **MCWILLIAMS** and **MURPHY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

This appeal obliges us to revisit IBP's violations of the overtime and record keeping provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-216, 217-219 ("FLSA"). In an earlier phase of this litigation the Secretary of Labor sought to require IBP to record and compensate its meat-processing employees for time spent in preliminary and postliminary work activities, specifically, in picking up, putting on, taking off, cleaning, and dropping off or storing required safety and sanitary equipment before and after their regular shifts. The litigation focused on the period between April 1, 1986 and August 1, 1988 (the "relevant period"). The history of this litigation is well documented in our earlier opinion, Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994) ("Reich I").

While the first phase of the litigation established that the activities in question were compensable, the second phase measured damages, by quantifying the time spent on such activities, determining whether it was de minimis, and deciding whether prejudgment interest should be awarded and whether a prospective permanent injunction would be appropriate. In phase one, the district court found that most of the activities performed by knife-wielding workers that related to the donning, doffing and cleaning of the specialized protective gear, the exchanging of dull knives for sharp ones, and the time needed to walk to these activities, were compensable work under the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 216(b), 251-262. Reich v. IBP, 820 F. Supp. 1315, 1324-28 (D. Kan.

1993). The trial court also found that the employees were entitled to compensation based on the "reasonable time," as opposed to the "actual time," required to perform these activities. Id. at 1328. We affirmed the district court in all respects relevant to this appeal. Reich I, 38 F. 3d at 1127-28. The case was then returned to the district court.

In phase two, both the Secretary and IBP presented evidence regarding the amount of compensable time that was due employees for the above activities during the relevant period. The Secretary mailed out a questionnaire along with a self-addressed stamped envelope to 23,580 IBP employees who worked at some time during the relevant period. From the 5,743 responses, 4,331 of which were from knife carriers, the Secretary randomly selected for deposition 485 employees, including 378 knife carriers. At their depositions, attended by IBP counsel, these employees were asked to estimate the amount of time they spent performing various preliminary and postliminary activities. From these estimates, the Secretary's expert calculated the mean time for these activities to be 24.68 minutes.

By contrast, IBP utilized an industrial engineering time study, based on methodology set forth by its expert, Dr. Stephen Konz, in a 1990 textbook, to calculate the amount of time the compensable activities should take. IBP's industrial engineers broke down the various tasks into their component parts and

timed with a stopwatch employees performing these tasks. With respect to wait times, IBP developed computer simulations based on observed arrival and wash rates. IBP submitted the total reasonable time for the compensable activities to be 4.65 minutes.

The district court considered both approaches and, in effect, split the difference. It noted that inherent problems existed in asking workers to estimate how much time it took for them to perform tasks, both because of employee self-interest in overestimation and because of the difficulty in remembering and estimating the amount of time taken by short-term tasks done in the distant past, particularly when intermingled with noncompensable tasks. The court noted that the Secretary's test estimated the actual time involved in performing the tasks, not the reasonable amount of time the tasks should take.

The district court also found IBP's time study method wanting. An underlying problem with the study was that it was conducted without the knowledge of, or any input from, the Secretary. The findings note that the study failed to account for certain items of compensable time such as the knife-room wait time, and also that it did not accurately reflect the real conditions faced by knife carriers during the relevant period. The employees used in the time study were not randomly chosen, but even so, some of their observed performance times were adjusted downward or eliminated altogether. The district court discounted

the IBP study's walking time results, finding they were achieved in unrealistically simulated plant conditions, and commented that the time study of the knife-exchange ignored aspects of compensable time in the relevant period since it measured exchange times applicable after IBP installed a new knife-exchange procedure to replace the procedure actually used during the relevant period.

After considering a wealth of evidence, including in-court demonstrations of donning and doffing protective equipment, the district court made the following findings on the average reasonable time during the relevant period to perform each compensable activity: (1) three minutes to wait for and exchange knives; (2) three minutes to put on and take off personal protective equipment; (3) three minutes wait time at wash stations to clean protective equipment; (4) two minutes for post-shift cleaning of protective equipment; and (5) three minutes pre-shift and post-shift compensable walk time. The district court concluded that in total fourteen minutes of compensable time was due employees for the relevant period, and that this time is not de minimis, and ordered prejudgment interest be included in the backpay award. Finally, the court granted the Secretary's request for a company-wide injunction forbidding IBP from violating the FLSA in the future.

IBP filed two motions for reconsideration and an objection to the Secretary's proposed injunction, all of which the district court denied. IBP now

appeals, raising only two issues. The main issue involves the district court's injunction forbidding IBP from violating the FLSA's overtime and record keeping provisions with respect to the compensable activities. IBP contends that because the current amount of time taken for these compensable activities is de minimis, the company is now in compliance with the FLSA and no injunction should have been entered. IBP also challenges the district court's factual finding that three minutes is the reasonable amount of time for knife wielders to don and doff the required safety equipment. IBP contends that the district court failed to consider that employees remove their equipment while waiting to wash and argues that 1.5 minutes is the reasonable time for this compensable activity.

**I**

Under section 17 of the FLSA, district courts are empowered to issue injunctions against violations of the Act, including the overtime and record keeping provisions. See 29 U.S.C. §§ 207, 211, 215, 217. Permanent prospective injunctions serve to effectuate congressional policy against substandard labor conditions by preventing future violations. Martin v. Funtime, Inc., 963 F.2d 110, 113 (6th Cir. 1992). The purpose of an injunction against future violations is remedial rather than punitive. Mitchell v. Hertzke, 234 F.2d 183, 186 (10th Cir. 1956); Reich v. Petroleum Sales, Inc., 30 F.3d 654, 656 (6th Cir. 1994). The

movant—in this case, the Secretary—bears the burden of satisfying the court that an injunction is necessary. See Hertzke, 234 F.2d at 187.

Prospective injunctions are an essential tool to effectuate the policy of the FLSA because the cost of compliance is placed on the employer rather than the employee or the government. Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir. 1987). Such injunctions do not place any substantive hardship on employers because they "'require[] [them] to do what the Act requires anyway—to comply with the law.'" Funtime, 963 F.2d at 114 (quoting Dunlop v. Davis, 524 F.2d 1278, 1281 (5th Cir. 1975) (internal quotations omitted)).

We review a district court's decision on whether to issue a prospective injunction for an abuse of discretion. Hertzke, 234 F.2d at 185; see Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 421 (1945). The district court's decision will not be disturbed unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986).

A permanent injunction can issue even without a showing of past violations, "[b]ut the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to

keep the case alive." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953), quoted in Hertzke, 234 F.2d at 187. "[C]urrent compliance alone, particularly when achieved by direct scrutiny of the government, is not sufficient ground for denying injunctive relief." Big Bear Market, 825 F.2d at 1383. Courts properly look at many factors in determining whether to grant a prospective injunction, including the employer's previous conduct, its current conduct, and the reliability of its promises of future compliance. Petroleum Sales, 30 F.3d at 657. When a past violation is found, courts balance that finding against factors indicating a reasonable likelihood that the violation will not recur, such as the employer's intent to comply, extraordinary efforts taken to prevent recurrence, the absence of repetitive violations, and the absence of bad faith. Martin v. Coventry Fire Dist., 981 F.2d 1358, 1362 (1st Cir. 1992) (Breyer, J.) (citing Big Bear Market, 825 F.2d at 1383); Hertzke, 234 F.2d at 187-88 (denial of injunction not abuse of discretion where employer has made extraordinary efforts to remedy the few past violations and grounds for believing future violations would recur are slim).

In arguing that a permanent injunction should not have been entered, IBP attempts to shift the focus away from the factors the district court properly considered and seeks to frame the case in terms of whether it is currently in compliance with the Act. Specifically, IBP argues that the amount of compensable time remaining after the changes in the knife-exchange procedure

were implemented is less than seven minutes, which is de minimis. It characterizes the district court's injunction as an implicit and legally erroneous finding that less than seven minutes is not de minimis. IBP thus suggests that we should review the issue de novo.

The de minimis doctrine in FLSA law derives from Anderson v. Mount Clemens Pottery Co., 328 U.S. 680 (1946), which was an action to recover unpaid wages and unpaid overtime compensation. The Supreme Court held that certain types of employee activity dictated by the employer and related to beginning productive work must be compensated as part of the workweek. The Court continued, however:

> We do not, of course, preclude the application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek contemplated by [29 U.S.C. § 207(a)] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

328 U.S. at 692. Hence, "insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek." Id. at 693. In the widely cited opinion Lindow v. United States, 738 F.2d 1057 (9th Cir. 1984), the Ninth Circuit set forth three factors for courts to consider when applying the FLSA de minimis rule: "(1) the practical administrative difficulty of

recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." Lindow, 738 F.2d at 1063. In finding the activities before it de minimis, the Lindow court emphasized the administrative difficulty of recording the time and irregularity of additional pre-shift work. Id. at 1064; see also 29 C.F.R. § 785.47 (de minimis rule should be applied "only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable working period of time he is regularly required to spend on duties assigned to him.").

IBP makes this argument, that the current remaining compensable time is de minimis, at the wrong time and before the wrong court. Current compliance alone does not require a court to deny an injunction and by itself is insufficient to allow a district court to deny an injunction. See Big Bear Market, 825 F.2d at 1384. As the district court aptly noted in its denial of IBP's first motion for reconsideration:

> If defendant is not presently in violation, the injunction is of little import. Moreover, if the present working conditions at defendant's plants are such that an injunction against violations is not warranted, defendant can seek an agreement with the Department of Labor that it is in compliance, or file an appropriate motion to modify the injunction in light of the changed conditions.

Appellant's App. at 250-51.

Looking at all the factors the district court considered convinces us it did not abuse its discretion in issuing the permanent injunction or in denying IBP's motion for reconsideration. Whether or not IBP has backed its way into current FLSA compliance by shaving a few minutes off the amount of compensable work time its workers put in every day is only one factor the district court was entitled to look at in weighing a prospective injunction. Factors cited by the district court in support of granting the injunction include IBP's failure to enter into a compliance agreement with the Secretary, its failure to compensate or record any of the compensable time even after the district court's phase one findings were affirmed by this court, and testimony by IBP's own director of industrial engineering that suggested that IBP still did not record or compensate employees for the work activities found to be compensable. Given these findings, none of which is clearly erroneous, the district court did not abuse its discretion in granting the permanent injunction. It is an understatement to state that IBP has not "made extraordinary efforts to prevent recurrence" of such violations in the future. Big Bear Market, 825 F.2d at 1383 (citing Hertzke, 234 F.2d at 187-88).

## II

IBP contends that the district court's finding of fourteen minutes of compensable time is clearly erroneous. Specifically, it argues that the court erred

in finding that the average reasonable time to don and doff the required safety equipment was three minutes. Under IBP's theory, employees, who were being compensated for the time taken to wash this specialized equipment and time spent to wait for the washing facilities to open, actually removed the equipment while waiting to wash or during washing itself. IBP argues that by counting three minutes for wash time and three minutes for donning and doffing time, the district court double counted the time needed to remove the safety equipment. According to IBP, half of the time allotted for putting on and taking off the protective gear, 1.5 minutes, should be subtracted from the amount of time used to calculate the backpay award for the relevant period. The reasonable amount of compensable time was the subject of IBP's second motion for reconsideration, also rejected by the district court.

A district court finding is clearly erroneous if on a review of the evidence as a whole we are left with the definite and firm conviction that a mistake has been made. Exxon Corp. v. Gann, 21 F.3d 1002, 1005 (10th Cir. 1994). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). IBP is not entitled to de novo review of the district court's findings.

The compensable activity in question involved knife-wielding workers putting on and taking off personal protective gear. The gear consists of some combination of a mesh apron, a plastic belly guard, mesh sleeves or plastic arm guards, wrist wraps, mesh gloves, rubber gloves, "polar sleeves," rubber boots, a chain belt, a weight belt, a scabbard, and shin guards. Reich I, 38 F.3d at 1124 (internal quotations omitted). In addition to the Secretary's time estimates and IBP's time study, the court considered the various pieces of protective gear admitted into evidence and an in-court demonstration by an IBP production trainer. In the demonstration, the trainer took 55 seconds to remove the equipment and a minute and twenty seconds to put it on.

When the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, the plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of that work. Mount Clemens, 328 U.S. at 687. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee[s'] evidence." Id. at 687-88. "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c)]." Id. at 688. In this

- 13 -

case, the district court approximated the reasonable amount of time based on an assessment that both parties' approaches contained "serious flaws." Appellant's App. at 232 ("Neither approach is without some serious flaws. In our synthesis of the vast amount of evidence presented in this case, we have considered the relative merits of the two approaches and the credible information generated by each.").

We are unpersuaded by IBP's arguments that the district court's finding of three minutes for donning and doffing the protective gear is clearly erroneous. First, IBP does not present evidence that employees are required to remove equipment while waiting to wash and not at any other time, or that the equipment could not have been removed at the work station or in the locker room before washing up. Second, although IBP now argues that no separate amount of time should be counted for removing safety equipment, its own time-study estimates account for a separate amount of time to remove equipment. Third, all of the estimates and demonstrations (including IBP's) show that the time to put on the safety equipment far exceeds the time to remove it.

Given the huge amount of widely conflicting evidence the district court was required to digest and the practical reality that any reasonable time estimate will lack exactitude, we consider the district court's efforts to arrive at estimates for each of these activities admirable. Reviewing the evidence as a whole, we find

no clear error in the district court's estimate of three minutes for putting on and taking off all of the required safety equipment.

**AFFIRMED**.